34580. STATE OF GEORGIA *v.* WALKER *et al.*

DECIDED JUNE 12, 1953.

**414**

*Wingate Dykes, Solicitor-General, A. C. Felton, III, John S. Averill, Jr., Chas. J. Bloch,* for plaintiff in error.

*S. M. Mathews, Garland Byrd, Jared Bull, Scott Williams, S. H. Dykes,* contra.

SUTTON, C. J. 1. There is a motion to dismiss the writ of error, on the grounds that, if this is a civil case, the State is not an interested party, as the judgment sought would not affect or control any property or action of the State, and the State is not represented by the Department of Law; and that, if this is a criminal action, the State has no right to an appeal.

This proceeding was brought under Code § 32-905, which provides in part: "Any member of a county board of education shall be removable by the judge of the superior court of the county, on the address of two-thirds of the grand jury, for inefficiency, incapacity, general neglect of duty, or malfeasance or corruption in office, after opportunity to answer charges." Whether or not such a proceeding is a criminal action, so as to preclude the State from filing a writ of error under Code § 6-901, is decided by the ruling in *City of Atlanta* v. *Stallings,* 198 *Ga.*

510 (32 S. E. 2d 256), to the effect that the removal of a city policeman was not a criminal proceeding where the tribunal for such removal had no power to fine or imprison the officer. As the judge of the superior court does not have power to fine or to imprison members of a county board of education in such a proceeding, but only to remove them from office, the present action was not criminal in its nature, and the State was not prevented by the provisions of Code § 6-901 from making this appeal.

The Constitution of 1945 gives county boards of education constitutional rather than statutory status. *Powell* v. *Price*, 201 *Ga.* 833 (41 S. E. 2d 539), and citations. A county board of education is a political subdivision of the State, and is an agency through which the county acts in school matters. *Board of Education of Candler County* v. *Southern Michigan Nat. Bank*, 184 *Ga.* 641, 642 (1) (192 S. E. 382). The State has an interest in whether or not the members of a county school board are competent and qualified to act, and the proceeding was properly brought by the Solicitor-General of Macon County in the State's name. Code (Ann.) § 2-4602. The motion to dismiss the writ of error is denied.

2. Counsel for the State say in their brief that this case is the outgrowth of the matters appearing in the cases of *Walker* v. *McKenzie*, and vice versa, 209 *Ga.* 653 (74 S. E. 2d 870), and they state that "All three cases arise on account of the fact that the defendants in error in this case as a majority of the Macon County Board of Education have persisted in their efforts to execute contracts whereby children from Macon County would be assigned to other counties for a period of 20 years with counties other than Macon receiving all State funds and teachers to which Macon County would be entitled if such children attended school in Macon County." The judge in his order discharging the rule nisi in this case stated that the record in the injunction case was before him, although it has not been made a part of the record in this court. However, it appears from the opinion in *Walker* v. *McKenzie*, supra, as compared with the record in the present case, that the proposed contracts for the education of some Macon County children in Peach and Taylor County schools, the execution of which was sought to be enjoined in

that case, are the same proposals which were approved by a majority of the board according to the record in this case. The approval of these proposals is the main basis for the charge of inefficiency in this case.

It was held in *Walker* v. *McKenzie,* supra (the decision of the Supreme Court being rendered after the present case was instituted and decided in the trial court), that the proposed contracts were not in violation of law, and that it would not be a gross abuse of the board's discretion to enter into them. Counsel for the State contend that, even if the proposed contracts were within the powers of the board, the board's action, in permitting by contract or by resolution some of the county's school children to attend schools in other counties, was detrimental to the interests and welfare of the schools of Macon County, and that such action by a majority of the board constituted a breach of public trust on their part.

The evidence shows that there are four schools for white children in Macon County. Montezuma High School had an average daily attendance of 93 pupils for the year 1951-1952. Oglethorpe High School had absorbed the high-school students from the Ideal School, and had an average daily attendance of 90 for the same school year. 30 grammar school children and 8 high school children in the Delta District attended Reynolds School in Taylor County, as the children of that district had done for the past twenty-seven years. Marshallville High School had dropped to an average daily attendance of 38, and so was no longer accredited. Attendance of 60 pupils is one of the requirements for an accredited high school, although it is proposed to increase this attendance requirement to 100 pupils within a few years.

In March, 1952, the Macon County Board of Education resolved to send the high-school children at Marshallville to Fort Valley High School in Peach County. Objections were filed to this resolution in April, and it was rescinded at the May meeting of the board. At the June meeting, a resolution was passed to permit the Marshallville children to attend Fort Valley High School. At the July meeting, execution of the proposed 20-year contracts with Peach and Taylor Counties was approved. Objections to this action were heard on July 11, 1952. On August

5, 1952, the board modified the proposed contracts in certain particulars, but on August 23, 1952, the board rescinded its approval of the 20-year contracts and by resolution consented for the Marshallville students to attend Fort Valley High School in 1952-1953, where their attendance was to be reported for the purposes of obtaining teacher pay and building-maintenance allotments from the State Board of Education. Those wishing to attend at Montezuma were allowed to do so. Macon County was to report the attendance of the Marshallville children for the purposes of receiving capital outlay funds from the State and also transportation allowances, as Macon County was to provide transportation.

The allotment of funds from the State to county boards of education is based on units of average daily attendance. For 19 high-school children, the State each year allows $2400 as a minimum salary for one teacher, $300 for building maintenance, and $200 for capital outlay, or new buildings. Whether the State Board of Education permits such allotments to be split, as the resolutions and contracts purport to do, does not appear, although it was the opinion of several witnesses that the State money goes where the children go.

The School Superintendent of Macon County testified that the long-standing arrangement for the children of the Delta District had been to transport them to Reynolds School in Taylor County and to pay $65 per month to that school. It was expected that these children would go to Oglethorpe School when the Taylor County schools would be consolidated at Butler and the Reynolds School closed.

. The superintendent's view was that by assigning the Marshallville High School attendance to Fort Valley High School, instead of carrying these children to Montezuma, Macon County would thereby lose some State funds for the maintenance of the building at Marshallville as an elementary school, while the costs of such maintenance would not be decreased; that State allotments for teacher salaries would also be lost, and possibly also the capital outlay allowance for new buidings. With these students remaining in Macon County, the county could provide more subjects for them by having more teachers and could probably finance larger buildings. Montezuma and Oglethorpe High

Schools will each need increased attendance to meet the proposed accrediting standards of 100 pupils. To allow pupils to attend schools in other counties would hurt the Macon County Schools as a whole, sometime in the future.

The county school superintendent also stated, on cross-examination, the view opposed to his: that Marshallville High School was five miles closer to Fort Valley than to Montezuma; that Fort Valley High School was larger than Montezuma High School, had more money, and offered a broader program of instruction, although it was not necessarily a better school; that, if the Marshallville students went to Fort Valley, the State money coming to Montezuma and Oglethorpe Schools would not be decreased but would remain the same as at present; that the Montezuma and Oglethorpe Schools could take care of the Delta and Marshallville children with some crowding, which was not advisable.

He further testified, as did other witnesses who were former board members, that the advantages and disadvantages to the county of sending children out of the county to school were discussed by the board, and that the majority of the board had acted efficiently, and, as they saw it, to the best interest of the schools of Macon County.

The evidence was sufficient to show that the board exercised its discretion. Opinions as to the advisability of a certain course of action may differ, depending upon whether the immediate or the future consequences of the action are regarded as more important. That a majority of the Macon County Board of Education regarded the benefits to the people of certain districts of sending their children out of the county as outweighing the advantages to be gained in the future by keeping them in the county, is not a breach of public trust requiring the removal of those members of the board constituting the majority. Courts are not concerned with the errors of judgment of a duly constituted governing body as to what is best for those governed, so long as the action taken is not in violation of law and is taken in the exercise of discretion and not arbitrarily. The evidence did not demand a finding of inefficiency on the part of the ma-

jority of the board, but authorized the judgment of the court discharging the rule against them.

*Judgment affirmed. Worrill and Carlisle, JJ., concur. Felton, J., disqualified.*